IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | CIVIL ACTION NO. 2:03cv393-WHA |
| | ) | [WO] |
| ELMER JAMES, JR. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a motion by federal inmate ELMER JAMES, JR. ["James"], to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. After careful consideration of the § 2255 motion, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is unnecessary and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

**I. PROCEDURAL HISTORY**

On 17 February 1998, James entered a negotiated guilty plea to conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(I). On 20 November 1998, the district court entered judgment and sentenced James to 252 months for the drug conspiracy conviction and 240 months for the money laundering conviction. These sentences were ordered to run concurrently.

James appealed, raising the following issues: (1) whether his sentence violated

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), and (2) whether there was a conflict of interest on the part of the counsel who represented him at sentencing.[1] On 9 July 2001, the Eleventh Circuit affirmed James's convictions and sentence. *See United States v. James*, 265 F.3d 1062 (11th Cir. 2001) (unpublished opinion, No. 98-6971). James petitioned the United States Supreme Court for a writ of certiorari, which was denied on 28 May 2002. *See James v. United States*, 535 U.S. 1098 (2002) (No. 01-6422).

On 1 April 2003, James filed this § 2255 motion, in which he asserts the following claims:

1. Appellate counsel was ineffective for failing to argue on direct appeal that the district court erred in applying a two-level enhancement of his offense level based on possession of a firearm in furtherance of the drug conspiracy.

2. Appellate counsel was ineffective for failing to argue that the district court erred in applying a four-level upward adjustment of his offense level for acting as a leader or organizer of the drug conspiracy.

3. Appellate counsel was ineffective for failing to argue that the district court erred in determining the quantity of drugs attributable to him for sentencing purposes.

4. Trial counsel rendered ineffective assistance by misleading and misadvising him during the guilty plea proceedings.

The government responds that these claims are meritless and that they entitle James

---

[1] James's appellate counsel, Thomas M. Goggans, Esq. ["Goggans"], initially filed an *Anders* brief. *See Anders v. California*, 386 U.S. 738 (1967). In compliance with an order of the Eleventh Circuit, Goggans subsequently submitted an additional, more substantive brief arguing the issues listed.

to no relief. James was afforded an opportunity to respond to the government's submissions, and has done so.

## II. DISCUSSION

### A. *Standard of Review for Ineffective Assistance of Counsel*

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial. To prevail on a claim of ineffective assistance of counsel, a movant must satisfy both prongs of the test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The performance prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id*. at 687-89. The prejudice prong requires a movant to demonstrate that seriously deficient performance of his counsel prejudiced the defense. *Id*. at 687.

To succeed on a claim of ineffective assistance, a movant must first establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687).

There is a strong presumption that counsel's performance was reasonable and

adequate, and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see Strickland*, 466 U.S. at 689. Review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel, based on facts "as they were known to counsel *at the time of the representation*." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (emphasis in original); *see Strickland*, 466 U.S. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." *Strickland*, 466 U.S. at 689.

The prejudice component of the *Strickland* test focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *See Strickland*, 466 U.S. at 687. Unreliability or unfairness is not established if counsel's assistance did not deprive the defendant of any constitutionally protected right. *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000).

To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the errors had some

4

conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693).

Unless a movant satisfies both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, a court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." *Id*. at 697. *See, e.g., Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### B.   *Ineffective Assistance of Counsel Claims*

#### 1.   **Appellate Counsel**

##### a.   *Enhancement under U.S.S.G. § 2D1.1(b)(1) for Possessing a Firearm in Furtherance of the Drug Conspiracy*

James contends that his appellate counsel was ineffective for failing to argue on direct

appeal that the district court erred in applying a two-level enhancement of his offense level under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1) based on possession of a firearm in furtherance of the drug conspiracy.[2] *See Memorandum of Law in Support of § 2255 Motion* (Doc. # 2) at 10-11,15-18 & 26.

The Presentence Investigation Report ("PSI") states, in pertinent part:

> Pursuant to USSG 2D1.1(b)(1), the offense level is increased by two levels if a dangerous weapon (including a firearm) was possessed. On October 21, 1997, at the time of the defendant's arrest, officers located a .45 caliber semi-automatic rifle in his home and a suitcase containing $200,000.

(PSI at 22, ¶ 40.) The PSI continues:

> Absent any indication of the defendant's withdrawal from the conspiracy prior to October 21, 1997, the defendant is to be held accountable for his possession of this firearm. Further, there is indication that the defendant inquired about purchasing firearms with a confidential informant, and the defendant's associates were observed to be armed with a .32 caliber pistol and a MAC-10, while the defendant was a participant in this conspiracy. Pursuant to USSG § 2D1.1, comment. (n.3), the enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons, and the adjustment

---

[2]In his motion, James appears also to assert separate substantive claims based on this and other alleged errors by the district court in determining his sentence. The government responds that such substantive claims are procedurally barred because they were not raised on direct appeal. *See Government's Response* (Doc. # 6) at 6-7. James asserts the ineffective assistance of appellate counsel as "cause" for his failure to raise these substantive claims on direct appeal. *See Reply to Government's Response* (Doc. # 8) at 2-4 & 6-7. Consequently, the merits of each of these substantive claims are considered in this court's discussion of James's allegations of ineffective assistance of appellate counsel. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (ineffective assistance of counsel can constitute cause excusing a procedural default so that a petitioner may obtain review of an otherwise defaulted claim). *See also Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).

> should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense. In this case, it is not clearly improbable that the weapons were connected with the offense; therefore, the probation officer believes that the enhancement has been applied properly.

(PSI, Addendum, at 3, ¶ 9.)

The record further indicates that at a detention hearing conducted on 14 November 1997, Montgomery Police Officer Randy Markham testified that officers located a semi-automatic rifle and a large sum of money in James's home at the time of his arrest. *See Government's Response* (Doc. # 6), Gov. Exh. 1, at 2-5. The detention order, entered on 18 December 1997, states:

> When James was arrested, he had over $200,000 on his person; it was found in a suitcase belonging to Myra Daniels, another indicted defendant. James also attempted to prevent officers from searching his home, though they had a search warrant. During the search, officers found a .45 caliber semi-automatic rifle. Even though James lives in the Middle District of Alabama with his girlfriend, he did not work her[e]. He owned a hair salon in the Virgin Islands for approximately two months before his arrest, but he did not have any income before owning the salon.

*Government's Response* (Doc. # 6), Gov. Exh. 1, at 4.

When James objected at sentencing to application of the enhancement under U.S.S.G. § 2D1.1(b)(1), claiming that a weapon had not been found in his home at the time of his arrest, the prosecutor responded that the enhancement was "covered" under *United States v. Otero*, 890 F.2d 366 (11th Cir. 1989), which holds that § 2D1.1(b)(1) may be applicable to a defendant based on the possession or use of a weapon by a coconspirator. *See Sentence*

*Hearing* at 5. While the district court, in response to the prosecutor's argument, indicated that it believed an enhancement under § 2D1.1(b)(1) was indeed justified by *Otero*, the court also indicated that § 2D1.1(b)(1) applied to James because, notwithstanding James's claim to the contrary, "the weapons were there [in James's home], it appears," at the time of his arrest. *See Sentence Hearing* at 5.

James continues to assert that neither a weapon nor a large sum of money was found in his home when he was arrested and that, therefore, enhancement under § 2D1.1(b)(1) was improper and was an issue that should have been pursued on appeal by his appellate counsel. However, James's assertions must be contrasted with the record, where, as noted above, both the PSI and the detention order state that, at the time of James's arrest, officers located a .45 caliber semi-automatic rifle in his home and a suitcase containing $200,000. Further, as also noted above, the district court found at sentencing that a weapon had been found in James's home and that § 2D1.1(b)(1) therefore applied to his sentence. These judicial findings cannot be controverted by James's mere conclusory allegations.

Thus, because the record does not support his claim of ineffective assistance of counsel, James fails to establish that his appellate counsel's performance was deficient or that he suffered resulting prejudice. *See Strickland v. Washington*, *supra*, 466 U.S. at 687-89. He is not entitled to any relief based on his claim that his appellate counsel was ineffective for failing to argue that the district court erred in applying an enhancement under § 2D1.1(b)(1).

### b.   Upward Adjustment under U.S.S.G. §3B1.1(a) for Acting as a Leader or Organizer of the Drug Conspiracy

James contends that his appellate counsel was ineffective for failing to argue that the district court erred in applying a four-level upward adjustment of his offense level under U.S.S.G. § 3B1.1(a) based on his role as a leader or organizer of the drug conspiracy. *See Memorandum of Law in Support of § 2255 Motion* (Doc. # 2) at 10-11, 19-22 & 26.

The PSI states, in pertinent part:

> Pursuant to USSG § 3B1.1(a), the offense level is increased by four levels if the defendant was an organizer or leader of a criminal activity that involved five or more participants, or was otherwise extensive. The defendant organized the delivery of $280,481.00 to the United States Virgin Islands and recruited the assistance of Mayra and Ruchel Daniels, along with Cleavon Edney, in transporting these illegal proceeds back to the United States Virgin Islands for payment of narcotics to be returned to the United States. Upon confiscation of these funds, the defendant claimed ownership of the money and attempted to assure the officers that the others involved were just doing him "a favor." He also convinced Cleavon Edney to file claim of ownership for the money and assert that the purpose of the money was to establish two businesses in the United States Virgin Islands.

(PSI at 23, ¶ 42.) Elsewhere, the PSI reflects that James (1) maintained a network of contacts in the Montgomery, Alabama, area to assist the drug ring in its distribution of cocaine; (2) recruited Gholam Gholami, a Montgomery grocery store owner, to assist in making a large number of wire transfers from his store to the Virgin Islands for the purchase of cocaine; and (3) recruited college students from Alabama State University to assist in distributing drugs throughout the city of Montgomery. (PSI at 18, ¶ 24.)

9

The factors that a sentencing court should consider in determining whether an upward adjustment under § 3B1.1(a) is warranted are "(1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others." *United States v. Vallejo*, 297 F.3d 1154, 1169 (11th Cir. 2002) (citing U.S.S.G. § 3B1.1, comment. n.4).

The record supports the application of the upward adjustment of James's offense level under § 3B1.1(a) based on his role as a leader or organizer of the drug conspiracy. Therefore, James fails to show that his appellate counsel's failure to argue this issue on direct appeal fell below an objective standard of reasonableness or resulted in prejudice to James. *See Strickland*, 466 U.S. at 687-89. Accordingly, he is not entitled to any relief based on his claim.

### c.      Drug Quantity Attributed for Sentencing Purposes

James contends that his appellate counsel was ineffective for failing to argue that the district court erred in its calculation of the quantity of cocaine attributable to him for purposes of determining his base offense level. *See Memorandum of Law in Support of § 2255 Motion* (Doc. # 2) at 10-11 & 22-26.

The relevant portion of the PSI states:

> In accordance with [U.S.S.G. § 1B1.3], the Base Offense Level shall be determined on the basis of all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and in the case of a jointly undertaken criminal activity, all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. The defendant participated in the attempt to deliver approximately $280,000.00 to the United States Virgin Islands for the purchase of 21 kilograms of cocaine. Additionally, he sent a total of $18,639.00 in wire transfers to the United States Virgin Islands for further purchase of cocaine. During conversations with the confidential informant, James reported that he was expecting a 5 kilogram shipment of cocaine on April 7, 1997, and an additional 25 kilogram shipment was expected the following Sunday or Monday. He further advised this same confidential informant that a 26 kilogram shipment, which was seized on March 5, 1997, belonged to his "family" and that an additional 10 kilogram shipment was seized a few days later. According to James, he and his cousin used to bring in shipments of 20 to 25 kilograms every two weeks. Additionally, James advised that he had different sources who would bring him five to six kilograms in between the 20 to 25 kilograms shipments. These amounts did not include additional smaller scale sales of crack cocaine and marijuana. Based upon this information alone, the defendant is held to a conservative estimate of 50 to 150 kilograms of cocaine.

(PSI, Addendum, at 2, ¶ 7.)  *See also Sentence Hearing* at 5-6.

The district court accepted the drug quantity recommended in the PSI and found that at least 50 kilograms but less than 150 kilograms of cocaine could be attributed to James, resulting in a base offense level of 36.  *See Sentence Hearing* at 6; PSI at 22, ¶ 39.

James maintains that the large quantities of cocaine that were the subject of his

11

conversations with the confidential informant (as referenced in the PSI) never existed, but rather were merely the imaginary product of the "wild talk and the insubstantial youthful chatter of a naive youngster [James] trying to impress his senior [the confidential informant]." *See Memorandum of Law in Support of § 2255 Motion* (Doc. # 2) at 24. However, other than James's own self-serving allegations, there is nothing before this court that supports James's claim. Therefore, he is not entitled to any relief based on his claim that his appellate counsel was ineffective for failing to argue that the district court erred in its determination of the quantity of cocaine attributable to him.

### 2. Trial Counsel

James contends that his trial counsel was ineffective because he misled James into pleading guilty by misadvising him that, if he went to trial and was convicted of the drug conspiracy charge, his likely sentence would be life imprisonment. *See Memorandum of Law in Support of § 2255 Motion* (Doc. # 2) at 12-14 & 26. James further contends that his trial counsel rendered ineffective assistance by misleading him to believe that he would receive a sentence of less than 21 years if he agreed to plead guilty. *Id.*

Pursuant to the orders of this court, Timothy C. Halstrom, Esq., ["Halstrom"], the lawyer who represented James in the guilty plea proceedings, filed an affidavit regarding his representation of James. *See Affidavit of Halstrom* (Doc. # 5). In his affidavit, Halstrom states that he met with James several times in January and February 1998 to discuss the

defense of his case, the possibility of a negotiated guilty plea, and the Sentencing Guidelines as they would apply to James. *Id*. at 2. Halstrom submitted with his affidavit a copy of a letter that he presented to James before James's guilty plea hearing, in which he set forth his evaluation of James's case and stated his opinion that entering a plea agreement with the government in exchange for a total sentence of 21 years was in James's best interest. *See Exh. A, Attached to Affidavit of Halstrom* (Doc. # 5). James signed the bottom of this letter, stating that he had received and reviewed it on 17 February 1998, the date on which he entered his guilty plea. *Id*.

The letter reflects Halstrom's explanation to James about how the Sentencing Guidelines would be applied if were convicted of the drug conspiracy charge without the benefit of a plea agreement. Halstrom also advised James (1) that his base offense level would be 38, based on the possibility that in excess of 150 kilograms of cocaine could be attributed to him for his part in the conspiracy; (2) that a two-level enhancement would be added to his offense level, based on possession of a firearm in furtherance of the conspiracy; and (3) that a three- or four-level upward adjustment would also be added to his offense level, based on his role as a leader or organizer of the conspiracy. *See Exh. A, Attached to Affidavit of Halstrom*. Adding these numbers together, Halstrom calculated that James would have an offense level of 43 or 44, and he advised James that this would subject him to a mandatory sentence of life imprisonment under the Sentencing Guidelines.[3]  *Id*.

---

[3]*See* U.S.S.G. § 5A - "Sentencing Table."

James's argument that Halstrom misadvised him when telling him that he faced a life sentence if convicted of the drug conspiracy charge after a trial is in large part a reiteration of his claims concerning the district court's alleged sentencing errors, i.e., the substantive claims that underlay his allegations of ineffective assistance of appellate counsel discussed above in this Recommendation. As this court notes above, the record supports the sentence enhancements applied to James for possession of a firearm in furtherance of the conspiracy and for his role as a leader or organizer of the conspiracy.

Thus, James fails to establish how Halstrom misadvised him. With regard to Halstrom's advice to James that his base offense level could be 38 based on his responsibility for in excess of 150 kilograms of cocaine as part of the conspiracy, although the district court ultimately accepted the PSI's finding that at least 50 kilograms but less than 150 kilograms of cocaine were attributable to James (resulting in a base offense level of 36), the PSI states that the finding of 50 to 150 kilograms of cocaine is a "conservative estimate" of the drug quantity attributable to James.

As the PSI reflects, James made statements to the confidential informant indicating that he and a codefendant received shipments of from 20 to 25 kilograms of cocaine every two weeks during the course of the conspiracy. Thus, there is evidence in the record to support the belief by James's counsel that, at a trial, the government could present evidence sufficient to show that James was accountable for an amount of cocaine in excess of the 150-kilogram threshold warranting a base offense level of 38. Halstrom's advice to James must

be viewed from the perspective afforded by the facts as reasonably understood by Halstrom at the time he gave that advice. *See Strickland*, *supra*, 466 U.S. at 689. Under these circumstances, this court cannot conclude that Halstrom's advice to James about his possible base offense level was unsound. Accordingly, James has not shown that Halstrom rendered ineffective assistance by advising him that he faced a life sentence if he were to be convicted of the drug conspiracy without the benefit of the plea agreement.

As for James's contention that Halstrom led him to believe that he would receive a sentence of less than 21 years upon pleading guilty, Halstrom plainly advised James in his letter that the government agreed to recommend a total sentence of 21 years in exchange for James's guilty plea. *See Exh. A, Attached to Affidavit of Halstrom*. There is no suggestion by Halstrom in the letter that James might receive a lesser sentence by pleading guilty. As this court notes above, James signed this letter before entering his guilty plea, stating that he had received and reviewed it.

The record further shows that, prior to the plea hearing, the United States Attorney presented James with a letter explaining the terms and conditions of a guilty plea.[4] *See* Doc. # 401 in Case No. 2:97cr213 (placed in file for the instant case). In that letter, the United States Attorney advises James, in pertinent part, that "[i]in exchange for your plea of guilty to counts 1 and 2 of the indictment pending against you, the United States agrees to recommend that you receive a sentence of 21 years." *Id*. James signed the letter, stating that

---

[4]This letter is also referred to as the "plea agreement" in the case file.

he "hereby freely and voluntarily agree[d] to the terms and conditions set forth." *Id*.

Other than James's own unsupported allegations, there is nothing before this court to suggest that he was misled to believe that he would receive a sentence of less than 21 years if he pleaded guilty. To the contrary, the record reflects that both Halstrom and the United States Attorney advised James that the recommended sentence under the terms of the plea agreement would be 21 years. Therefore, James fails to establish that his trial counsel's performance was deficient or that he suffered resulting prejudice with respect to this allegation of ineffective assistance of counsel. *See Strickland*, *supra*. Accordingly, James is not entitled to any relief based on his claim that his trial counsel rendered ineffective assistance by misleading and misadvising him during the guilty plea proceedings.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by James be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **[on or before 13 April 2006.]** A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District

Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc).

Done this 30th day of March, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE